UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:25-cv-01668-SSS-DTBx | Date | October 7, 2025 |
|---|---|---|---|
| Title | *Jeremiah Calderon v. KeHE Distributors, Inc. et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING MOTION FOR ORDER REMANDING ACTION TO STATE COURT [DKT. NO. 12]**

Before the Court is Plaintiff Jeremiah Calderon's Motion to Remand Action to State Court. [Dkt. No. 12, "Motion to Remand"]. For the reasons set forth below, Plaintiff's Motion is **DENIED**.

## I. BACKGROUND

On July 2, 2025, Defendant KeHE Distributors, Inc. properly removed the instant case to this Court under 28 U.S.C. §§ 1332 and 1441(b) (diversity jurisdiction) and 28 U.S.C. § 1332 (d) (the "Class Action Fairness Act" or "CAFA"), [*see* Dkt. No. 1, "Notice of Removal"]. Plaintiff does not dispute that two of the three CAFA requirements for removal to federal court are satisfied here: (1) at least one member of the putative class is a citizen of a State different from Defendant, and (2) the putative class consists of at least 100 members. [*See* Motion to Remand]. Plaintiff now challenges Defendant's removal on two bases: (1) Defendant has provided insufficient substantiation that the matter in controversy exceeds $5 million and (2) the Labor Managements Relations Act ("LMRA") is inapplicable.

## II. LEGAL STANDARD

Under CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs," and is a class action in which there is minimal diversity. 28 U.S.C. § 1332(d)(2). However, where the plaintiff challenges removal under 28 U.S.C. § 1446(c)(2)(B), removal is proper only if "the district court finds, by the preponderance of the evidence, that the amount in controversy [asserted by the defendant] exceeds" the jurisdictional threshold. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). In other words, the "defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy" meets or exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir. 1996).

In meeting this burden, removing defendants are permitted to rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn,* 936 F.3d 920, 925 (9th Cir. 2019) (*citing Ibarra v. Manheim Invs., Inc.*, 775 F. 3d 1193, 1199 (9th Cir. 2015)). "Assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have some reasonable ground underlying them." *Id.* at 927 (citation modified). Accordingly, in the context of "assumed violation rates," there is no "requirement that [a defendant] prove it actually violated the law at the assumed rate"—a defendant merely needs to provide a reasonable ground for the assumption. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies." *Id.* at 1198.

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400. In that sense, the amount in controversy reflects the maximum recovery Plaintiff could reasonably recover. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them").

## III.  DISCUSSION

### A.  Class Definition

Plaintiff argues Defendant did not prove by a preponderance of the evidence that Defendant met the amount-in-controversy requirement under CAFA. [Motion to Remand at 6]. In its Removal, Defendant established a violation amount of $5,612,544.00 based on Plaintiff's meal period cause of action alone, considering a hourly rate of $14.00 ($14.00 [one hour of pay] x 3 days per workweek x 192 workweeks x 1,031 employees). [Notice of Removal at ¶ 31]. Plaintiff argues that this calculation is overinflated due to Defendant's unreasonable widening of the class definition and the nature of the claim. [Motion to Remand at 1]. The Court finds that Defendants adequately provided a reasonable ground for its assumption and thus met the amount-in-controversy requirement under CAFA.

Specifically, Plaintiff argues that Defendant improperly calculated the amount-in-controversy by accounting for all 696 of KEHE's hourly employees in California who were *not* paid premiums instead of only those that were *underpaid* wages due to Defendant's alleged regular rate violations that resulted in a decrease or non-inclusion of incentive compensation in those workers' wages. [*Id.* at 7–9]. The Complaint does indeed define the Class as those employees who "earned incentive compensation, including shift differentials, and overtime wages, meal period premiums wages, and/or paid sick leave wages in the same workweek." [Dkt. No. 1-1, "Compl." at ¶ 16]. It also alleges that Defendants failed to "pay meal period premiums at the correct regular rate of compensation by incorporating all non-discretionary incentive compensation . . . in the event that a legally compliant meal period was not provided to their non-exempt employees." [*Id.* at ¶ 12]. Based on these allegations, it is possible to infer that the amount-in-controversy only includes the underpayment to workers who earned incentive compensation that resulted from Defendants allegedly failing to factor in incentive compensation into the regular rate for meal period premiums.

However, Plaintiff also pleads in the same Complaint that Defendants "failed in their affirmative obligation to provide *all* of their non-exempt employees, *including* Plaintiff and members of the Regular Rate Class, with *all* legally compliant meal periods in accordance with the mandates of the Labor Code and Wage Order 7; § 11." [Compl. at ¶ 29 (emphasis added)]. To assume from this express pleading that a class member would be any employee who earned premium pay and was potentially not paid it is not the kind of chain of assumption that is "pulled from thin air," as Plaintiff argues. *Perez v. Rose Hills Co.*, 131

F.4th 804, 808 (2025). Instead, it is an assumption that is "founded on the allegations of the complaint." *Id.* That it is equally possible that damages could be less than the requisite $5 million does not defeat Defendant's calculations as a matter of course. *Arias*, 936 F.3d at 927; *see also Tijerina v. United Airlines, Inc.*, No. 24-CV-02466, 2025 WL 1355308, at *3 (S.D. Cal. May 9, 2025) ("An assumption is not unreasonable merely because a lower rate could be assumed."). Defendant has thus satisfied its burden by demonstrating a reasonable assumption as to the class definition for purposes of calculating the amount-in-controversy.

### B.     Violation Rate

Plaintiff also challenges Defendant's violation rate as "arbitrary and baseless." [Motion to Remand at 9]. Defendant calculates, "Assuming three days per employee per week with one noncompliant meal period per day (either because it was interrupted or not taken at all), each employee would be entitled to three additional hours of pay for each week they worked over the 48-month (or 192 work week) statute of limitations period." [Notice of Removal at ¶ 31]. Plaintiff further argues that Defendant should have used the payroll records of the Class showing the actual number of meal period premiums paid over the course of the class period and the corresponding incentive compensation rates paid instead of making "arbitrary guesses at the violation rates." [Motion to Remand at 9].

However, "the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400 (citation modified). In that sense, it reflects the maximum recovery Plaintiff could reasonably recover. *See Chavez*, 888 F.3d at 417 (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"). It is also not the obligation of Defendants to prove Plaintiff's case at any stage. *See Bermejo v. Lab'y Corp.*, No. 20-CV-05337, 2020 WL 6392558, at *4 (C.D. Cal. Nov. 2, 2020); *Lopez v. Adesa, Inc.*, No. 19-CV-01183, 2019 WL 4235201, at *5 (C.D. Cal. Sept. 6, 2019) ("[A] removing defendant is not required to go so far as to prove plaintiff's case for him by proving the actual rates of violation."). "It makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist. For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Perez*, 131 F.4th at 808; *see also Danielsson v. Blood Ctrs. Of the Pac.*, No. 19-CV-04592,

2019 WL 7290476, at *14 (N.D. Cal. Dec. 30, 2019) ("An assumption is reasonable when it is supported by the allegations of the plaintiff's complaint.").

Here, Plaintiff alleges Defendant's "timekeeping and/or policies and practices resulted in Plaintiff and other non-exempt employees not being compensated for all hours actually worked." [Compl. at ¶ 11]. The Complaint also states that "Plaintiff and other non-exempt employees regularly worked more than eight hours in a workday or 40 hours in a workweek." [*Id.*]. It also alleges that Defendant's policies and practices failed to "provide all of their non-exempt employees in California . . . with all legally compliant meal periods . . . ." [*Id.* at ¶ 29]. Lastly, it alleges Defendant's "utilization of these unfair and/or unlawful business practices deprived Plaintiff and *continues* to deprive members of the Classes of compensation to which they are legally entitled . . . ." [*Id.* at ¶ 44 (emphasis added)].

This Court has previously found that similar language supported a 60% violation rate, as is the case here. *See Herrera v. Signature Flight Support LLC*, No. 22-CV-03082-SSS, 2022 WL 4225376, at *3 (C.D. Cal. Sept. 13, 2022) (finding that the following language in the complaint supported a 60% violation rate but may even support a 100% violation rate: "Based on information and belief, DEFENDANTS *implemented policies and practices* that failed to relieve the Class Members of all duties and employer control during any rest periods"); *see also Lopez*, 2019 WL 4235201, at *5. Further, Plaintiff does not point to any allegations or evidence that suggest a 60% violation rate is unreasonable, and there are no other qualifying words regarding the violation rate in the allegations that suggest less than uniform violations. *See Lopez*, 2019 WL 4235201, at *5.

## IV.   CONCLUSION

Based on a 60% violation rate, the Court finds by the preponderance of the evidence that the requisite amount-in-controversy for purposes of CAFA jurisdiction is met. Just based on Plaintiff's Second Cause of Action (Meal Periods), with a 60% violation rate and an hourly minimum wage rate of $14.00, the amount in controversy is $5,612,544.00 ($14.00 [one hour of pay] x 3 days per workweek x 192 workweeks x 1,031 employees). [*See* Notice of Removal at ¶ 31].

Defendant's calculations for the amount in controversy for Plaintiff's Third Cause of Action are reasonable and satisfy the CAFA jurisdictional threshold of $5 million. Thus, the Court need not reach Plaintiff's arguments regarding LMRA preemption.

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Remand.  [Dkt. No. 12].

**IT IS SO ORDERED.**